*632 OPINION.
SteRNhagen :
Reduced to its essentials, the petitioner’s first contention is that its original 1,750 shares of capital stock were issued for an aggregate of tangibles and intangibles and that by the application of the method approved in St. Louis Screw Co., 2 B. T. A. 649, it may properly compute its invested capital by including a portion of the good will of the preceding business as property paid in for stock or shares, thus leaving some part of the tangible property to be treated as paid-in surplus so as to increase the invested capital fro tanto. It contends that the contract and resolutions covering the transactions at the time of its incorporation are to be read in their entirety and that, if properly so read, they indicate that Rubens turned in all of the property of his business, both tangible and intangible, for 1,743 shares of its capital stock.
We are impelled, however, by a fair reading of the written evidences of the transaction, to decide against the petitioner in this respect. The express language of the offer, the resolution and the contract, as well as the certificate of subscription filed with the Secretary of State, are unequivocal and unambiguous and leave no room for construction. The parties themselves deliberately and with unmistakable clearness chose to have the tangible property alone paid in for capital stock and the intangible property separately treated. This was their manifest intention and it was legally fulfilled. The fact that a subsequent revenue law makes their choice less fortunate to them than it might otherwise have been and imposes upon the corporation a greater tax than if another course had been adopted, can not serve to justify an interpretation of the transaction at variance with the clear language of the instruments by which it was performed. The argument that contracts should be interpreted as a whole and so as to give effect to each term is beside the point, for it is by thus reading the documents that we are led to the conclusion reached.
As no intangible property was in fact paid in for stock or shares, and since the statute does not provide for the inclusion of intangible property as paid in surplus, Herald-Despatch Co., 4 B. T. A. 1096; Shope Brick Co., 5 B. T. A. 1042; Nature’s Rival Co., 6 B. T. A. 294, it becomes unnecessary to consider or determine the value, if any, to *633 be ascribed to the intangible property of the preceding business at the time of the acquisition thereof by the petitioner. Upon this point the respondent is sustained.
The petitioner seeks an increase of its war-profits credit by including within its prewar net income the amount of $17,500 paid to its stockholders in 1912 and 1913 in proportion to their stock holdings. This it is entitled to do. The evidence is clear enough to establish that this was merely a method of distribution of earnings before adding the profits to surplus for the year. It was not done with the precision of the declaration of a dividend, but it was in fact a distribution to stockholders rather than an expense of operating the business. As such it was part of the petitioner’s net income for prewar years in question and should be so treated in the determination of the credit. Upon this point the respondent is reversed.

Judgment will be entered on 20 days’ notice, under Bule 50.